The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right. Be seated, everybody. The third case is 24-1350 Employers' Innovative Network, LLC v. Bridgeport Benefits, Inc. and other parties. Mr. Ford. Thank you, Your Honor, and may it please the Court. My name is Jay Ford, and I represent the appellates in this matter, Employers' Innovative Network, LLC, and Jeff Mullins. And the issues before the Court today arise as a result of an arbitration in Bermuda that is illegitimate in two fundamental respects. First and foremost, the District Court lacked jurisdiction to compel the arbitration to proceed in Bermuda and then to subsequently enforce the arbitration award that was rendered there. In fact, the District Court lacked any jurisdiction over it, any subject matter jurisdiction over this matter at all. And secondly, the arbitrator's undisclosed conflict of interest. Well, you're a little late in the game to raise that, which, of course, we have to always address. You are right, Your Honor, but as this Court is aware, Federal courts have a special obligation to satisfy itself not only of its own jurisdiction, but that of the lower court. And subject matter jurisdiction is a non-waivable defense, even if the parties fail to address it. So that raises the question as to whether or not this issue regarding the District Court's ability to act under the New York Convention is actually jurisdictional, because you had diversity jurisdiction, right? The District Court found diversity jurisdiction when it denied the motion to remand. And, in fact, I think found that all of these parties were domestic parties. You say you weren't sure about that, but I think the District Court found that. There was this corporation that may have been incorporated in Bermuda but headquartered in Florida, so it appears there's diversity jurisdiction. So with that, I mean, is the argument that there are two requirements for jurisdiction, subject matter jurisdiction here? No, Your Honor, but it fails under both tests, and I'll tell you why. Okay. So first, addressing diversity, which is how the case was initially removed to the District Court in the first place. In the notice of removal, the defendants assert that EIN citizenship was a West Virginia LLC, which is the principal place of business in West Virginia, and that voluntary benefits was a Florida LLC with its principal place of business in California. But an LLC's citizenship is determined based upon that of its members, not its principal place of business or charter state. Now, certain defendants did assert a printout. With respect to EIN, the District Court found that there was diversity, and you have not challenged that. So they found that EIN was a diverse citizen, and then you put forward, and it's your client, you put forward no evidence to challenge that finding. So don't we have to find that that District Court determination is clearly erroneous? You haven't given any evidence, right? I understand you've got a little gamesmanship story going on where you don't want to tell us who the LLC members are. We could order that. That's totally fine. But it seems odd where the District Court makes that finding. You then don't challenge it, and so we have a District Court finding that your client is diverse. I guess that's true. The District Court did find that, but the District Court found that based upon a printout. And are you representing as an officer of the court that your client is not diverse, that the members of the LLC are not diverse? Are you representing that to the court? I'm not making that representation, Your Honor. Frankly, I don't know, but the District Court didn't either, and that's why diversity wasn't established in the underlying case. Because the evidence that the District Court relied upon to find that EIN and, for that matter, voluntary benefits that the complete diversity rule satisfied were printouts from the West Virginia Secretary of State's website. But you didn't argue a diversity issue, did you? It was challenged on a motion to remand that was ultimately the District Court dismissed. But again, we raise it here in the context of because there's not diversity jurisdiction and because there's not jurisdiction under the new regulation. Well, let's assume there is diversity jurisdiction. Then we move to this other question that Chief Judge Diaz pointed out. So now you have this question of authority under the New York Convention. So what particular animal is that? Is that subject matter jurisdiction or is it something else? It's subject matter jurisdiction, Your Honor. And the reason why it's important in this case is that Section 4 of the Federal Arbitration Act generally provides or generally only permits District Courts to order arbitration within their own district. And so the only basis to compel an arbitration outside of a district is Section 206. I'm sorry. I don't understand this at all, right? You filed a suit, right? And if we accept Judge Agee's hypothetical, the District Court had jurisdiction over that suit that you filed once it was removed because of diversity. Assuming, yes. Assuming, yeah, we're making an assumption, right? Understood. And so your argument is that the FAA deprives the Court of diversity jurisdiction? So they needed to dismiss your original complaint was required to be dismissed under 12b-1? I don't believe that's what I'm arguing, Your Honor. If it's subject matter jurisdiction, then it has to be dismissed under 12b-1. That's what I don't understand your argument. Sure. Well, the only law that gives a District Court the authority to order arbitration to proceed in a different district beyond its own is Section 206 of the Arbitration Act. And both 206 and 207, which is the corresponding section that gives the District Court the power to enforce a Court of Arbitration Award, requires the District Court to have jurisdiction under the New York Convention. And that's not present here, and that's addressed by Section 202. That's the only authority under Chapter 2, but there's authority under Chapter 1. And Chapter 1 provides that a District Court can... I think the only way a District Court can order arbitration outside of its own district is if the arbitration agreement falls under the New York Convention. And that's addressed by Section 202. I thought the Supreme Court said that those are just venue provisions that are waivable, right? The location of where the enforcement happens under Chapter 1 are venue provisions. They're not jurisdictional provisions, and so they're waivable. And nobody sort of argued that. We certainly did not argue that, and I don't recall the appellees raising that in their briefs either. I understand the appellees didn't argue. But your basis for it being jurisdictional is that it can't be done in this district under Chapter 1? That's your jurisdictional argument? Correct, Your Honor, that it has to fall under the New York Convention for the District Court to be able to compel arbitration in Bermuda in the first place and to subsequently enforce the Bermuda Award without satisfying Section 207, which is the only basis for the District Court to confirm a foreign arbitration award. And that requires the arbitration had issued to fall under the New York Convention. Well, I don't think the district – I'm sorry. No, go ahead. I mean, that seems to come back to the same threshold question. If the court enters an order under Section 2 that's not authorized under the statute, is that merely an error of law, or are we still on some form of subject matter jurisdiction? I believe that's a subject matter jurisdiction question, Your Honor. And tell us again why that's the case. And that's because the only basis, the only power that, you know, federal courts are courts of limited jurisdiction and are only authorized to act in ways that are recognized by Article 3 of the Constitution and statutes promulgated by Congress. The only way for a district court to enforce a foreign arbitration award is for that foreign arbitration award to fall under the New York Convention. So just so I understand, tell me why they couldn't do it under Chapter 1? Because Section 202 is the only statute that allows a court to enforce a foreign arbitration award. But I thought the territorial rules under Chapter 1, Sections 9 through 11, were permissive. They're not mandatory. So any district court could enforce. That seems like what the Supreme Court said in Cortez Burr in 2000. I don't believe so, Your Honor. My understanding is that Section 202, and that's the only statute that's cited by the district court in its enforcement opinion. We understand that maybe the district court cited the wrong statute, but it's either a Chapter 1 or Chapter 2 case. Your argument is if it's not Chapter 2, it cannot be Chapter 1. And what I'm having a hard time understanding is why it cannot be Chapter 1. What is the provision that you're relying on for that idea? It's Chapter 2. I mean, if it could happen under Chapter 1, there would be no need for Chapter 2. Chapter 2 would be completely superfluous. It wouldn't be superfluous because it would apply to foreign arbitrations. And that's what we have here. Where the Section 202 provisions are satisfied. If they are not satisfied, then it doesn't fall under the convention and it's a Chapter 1 case. I would argue, Your Honor, that if it doesn't fall under Chapter 2 and it's a foreign arbitration, it falls outside of the New York Convention, it falls outside of the FAA, and there's no authority to... Entirely U.S. parties that engage in U.S. conduct, but if they choose a forum abroad for the arbitration, then in your view, contrary to all the other circuit courts, U.S. federal courts lack jurisdiction to enforce that arbitration. If it falls under the New York Convention, yes. Well, I mean, the district court never decided that, right? And whether or not you're right, I suspect you may not be right, I think the district court would have had to look at that and decide whether or not it had jurisdiction. And if it did, then decide what the remedy would be with respect to the motions that were before the court. to vacate or confirm and respond to your arguments about evident partiality, which may or may not be the same analysis under Chapter 2 as under Chapter 1. But I want to go back to Judge Agee's and my concern. You say this is subject matter jurisdiction, but the court had diversity jurisdiction, so it seems like we're doing jurisdiction twice over. Why is that? We're doing jurisdiction twice because it fails under both, and those are the only two sources under which the court could have jurisdiction at all. I'm not sure that that fits. Well, we know the FAA doesn't independently provide jurisdiction, right? So either there's diversity jurisdiction or not. But if there's diversity jurisdiction, then the district court had jurisdiction. It may not have had statutory authority, we can debate that, but it had jurisdiction. If we accept that there was diversity jurisdiction, I understand you're sort of half arguing that, but if they had diversity jurisdiction, then the court had jurisdiction. It may have made an error in applying the wrong statute, but that doesn't deprive it of jurisdiction, does it? I think so. I think it doesn't have jurisdiction to compel an arbitration in a foreign country. The subject matter of the case is whether the arbitration can be compelled in Bermuda. There's no authority for the district court to do that beyond Section 206 of the FAA. So if I understand your argument, if there had been a failure of diversity jurisdiction in this case, your position is that the district court would have had independent jurisdiction under Chapter 2? Under Section 203, because that provides that cases falling under the New York Convention are falling under the laws of the United States and would have federal question jurisdiction. Although in this case it fails, you say? Correct. Well, just help me remember what transpired here. The Bridgeport or somebody affiliated with them filed an application in the district court to have the arbitration award confirmed. That's correct. Correct? And in the application, they asserted that it was the provision of the New York Convention that authorized the court to act? Yes, Your Honor. That's correct. So was the issue of the other section, Section 1, was that ever raised other than by you in saying it could be vacated under that? Was that ever raised as a... Under Section 1 of the FAA? Yeah. There was no discussion, I believe, of Section 1 under the FAA in any of the proceedings below. It was all grounded in the sections implementing the New York Convention, which were Sections 206 through 209, or 201 through 209. And under the New York Convention, in order for a case to fall under the New York Convention... So can you tell me, maybe this will help me. Hypothetically, except that I think there's diversity of jurisdiction, but also that Chapter 2 does not apply. So the New York Convention does not apply. Tell me what you think the decisional language of this court would read. We would vacate. And what is to happen when it gets back to the district court? The district court would, if it would conduct, and assuming that this court determines that the New York Convention doesn't apply, it would not be able to compel arbitration in Bermuda. It could compel arbitration. The argument would be, you would have an argument about whether Chapter 1 permits having compelled the arbitration or not. But that would be a question. I understand you have a view on that, but that question the court would have to decide is whether Chapter 1 permits it to compel arbitration in Bermuda. Yes, I think that would be a question that would have to be decided, Your Honor. And then if not, then your theory is that your claims for damages can just go forward in federal court without any arbitration. Assuming there is diversity. Yes, that's the premise to my question. Understood, Your Honor, yes. And that's because you think there's a gap for a case that fails to fall in the convention, but includes a foreign location for the arbitration. Then that doesn't fall in either Chapter 1 or Chapter 2. That's correct, Your Honor. So this issue under the convention was, you know, we brought it up via supplemental briefing. So why wouldn't a more appropriate remedy be to send it back to the district court to decide whether or not the case actually falls under the convention? It didn't address that issue at all. It simply saw an agreement applying Bermuda law, appointment of a Bermudian arbitrator, and said that's good enough for me. But it turns out that that wasn't, may not have been good enough under Chapter 2. So why would we decide that in the first instance? Is there permission to continue, Your Honor? Well, yeah, I asked a question. Fair enough. I think that would be a reasonable remedy in this case. There certainly was no, district court didn't have any sort of analysis as to whether this arbitration did or did not fall under the New York convention. One more question.  So this is for both counsel. So let's just assume that the court determines either to let the district court in the first instance address Section 2 or Section 2 doesn't apply. And it goes back. In order to have Section 1 considered, would the application have to be amended to include a Section 1 argument? I would think so, Your Honor, because that wasn't raised in the initial briefing to compel arbitration in the first place. Okay. All right. Thank you very much. Ms. Cooper.  Your Honors, may it please the court. My name is Jamie Cooper, and I represent Capital Security Limited, Universal Risk Intermediaries, and Gina Nordstrom. I will be addressing the subject matter jurisdiction issue, the applicability of the New York convention, and if I have time, the waiver that resulted from Apelli's failure to exhaust his review of the substantive issue within the course of the Bermuda arbitration. I would argue, Your Honors, that subject matter jurisdiction exists by virtue of diversity. And that was clear. And although Apelli is now... So help me just answer why you think that was clear. Okay. Because you allege the principal place of business of an LLC, and that is obviously irrelevant for an LLC citizenship. Right, Your Honor. The district court was concerned about this issue. And before entering the court's order on enforcement, specifically asked the parties to submit a joint submission on citizenship of the parties. And in that joint submission, which is the underlying document number 272, the parties collectively went through the jurisdiction of each of the parties and... So this is docket entry 272? And what does it say about the members of EIN? It says that the three members of EIN were Jeffrey Mullins, William Edward Mullins, and Gary Bowling. And at the time, at all points between the time of removal and the present, they were residents of the state of West Virginia. Interestingly, Your Honors, although the notice of removal admittedly did allege the principal place of business for capital security to be Florida, in subsequent submissions to the court, it was alleged to be Bermuda and never challenged.  Is that a corporation or some other type of... Capital security is a corporation organized under the laws of the country of Bermuda. And so it's capital security limited. How do we know that? What's the authority? Because it's capital security's limited and they have all types of business organizations. So how do we know that's the equivalent of an American corporation? Your Honor, I don't know the answer to that question, but I do know that it was asserted and never challenged below that capital securities is a Bermuda entity. It's a Bermuda insurer. It's a Bermuda segregated captive company under the Bermuda Segregated Act. The reason I ask that is that circuit courts seem to be a little split on what to do with some of these foreign entities as to whether or not they're the equivalent of a corporation. And then that leads to the questions we're addressing here. And it doesn't look like to me there's necessarily a definitive answer in the record. And I think that's right, Your Honor. Our allegation in the joint submission is that capital security is a Bermuda corporation organized under the laws of Bermuda. And that its principal place of business was in Bermuda. So go back to that, right? Sure. You alleged in your notice of removal that your principal place of business was Florida. We did, Your Honor. Right. And so help me understand why I should ignore the allegation that you made. So that was a mistake. And in subsequent pleadings twice in the joint submission, but also prior to that, in our response to, I believe it was in our motion to dismiss papers, we asserted that the principal place of business was Bermuda. The allegation in the notice of removal was a mistake. I will submit to you that we believe that it was a procedural defect that can be amended by interlineation, as this court has done previously in Jaffe-Spindler Company versus Genesco. Did the district court ever make a finding on, you've got two different positions you've taken in the district court. Did it ever enter a finding as to which one it thought was correct? It never addressed the issue beyond asking the parties for the joint submission on citizenship. And once that was presented to the court, no challenge, nothing was raised about the question. Nobody brought it up, and the court, I believe, accepted it, but didn't address it specifically. So I take from that that you're supportive of the chief's suggestion that because the district court didn't consider whether the New York Convention applies, and considering whether the New York Convention applies might well turn on whether the principal place of business of capital security is, among other things, that the best course of action here would be to vacate the order and send it back to consider whether the court applied the correct law? Your Honor, I think the correct course of action is to affirm the court's decision because... All right, well, let's hypothetically assume that that's not an option available to you. Okay. On the current record, that seems like an option that does not seem... Let's hypothetically accept that that's not an option available to you. Okay. Because the current record, you know, your pleading, whatever else your motion to dismiss papers say, your pleading says that it's a Florida principal place of business, and that would suggest to me that the New York Convention does not apply. But if there's a factual dispute about that question, then it seems like a harder issue for us to resolve. And I understand that, Your Honor. I think that, you know, the New York Convention can apply even between U.S. citizens if there is that rational relationship that's contemplated by Section 202. Okay, I understand that argument, and I totally accept it. But assume for a minute that you have not shown a reasonable relation based on the governing law as opposed to any of the conduct. Your argument still would be we should have the opportunity to prove that we were mistaken when we alleged that we were a Florida principal place of business. Sure, Your Honor. If that's what the court wishes to do, I would just note that nowhere in the briefing on the enforcement issue did the appellees raise the issue of the applicability or challenge the issue of the applicability. The parties cannot stipulate to the application of the wrong law, right? You can't do it, right? Listen, I would love it if you could and make our job a whole lot easier, right? Like, you can't stipulate by conduct to applying the wrong law. Like, we can't say, oh, we're just going to pretend like it applies, right? You have to actually, like, apply the correct law. Thank you, Your Honor. I see that my time is up. So if you have no further questions, I will... Thank you, Ms. Cooper. Thank you. Mr. Dasgupta? Thank you, Chief Judge Diaz, and may it please the court. My name is Riddhi Dasgupta, and I represent the appellees in this matter. I shall address the merits of their argument. I shall start... Do you represent all the appellees or just some of them? With respect to the merits, sir, I represent all of them. Okay. And, you know, appellants press their New York Convention and their FAA claims. I think it's important to remember that the nub of their contention with respect to the merits is that the highly respected arbitrator Delroy Duncan, the King's counsel, Silk, in Bermuda, as they're known in Bermuda and the British Overseas Territories as well as in the U.K., he failed to disclose or recuse himself from this Bermudian arbitration, and that offended the public policy of the United States. I don't know that it's so much an objection to the failure to recuse as an objection to the failure to disclose, right? That's what we're talking about here. So why don't you focus on that? Well, Your Honor, the failure to disclose, he didn't disclose in this matter for a variety of reasons. One is that he didn't think it was an issue to begin with, and that's the central hub and spoke of their merits argument. And the other issue is that he's a totemic figure in that community, and if he were to disclose what he perceived was a frivolous or a non-issue, I don't want to use the word frivolous, but a non-issue or not a significant issue, then that would be a precedent that everybody, less prominent attorneys in that community would also have to follow. Your argument in some of your briefings seems to put great store on the stellar reputation of Mr. Duncan. That was his name, wasn't it? Yes, sir. Arbitrator. And I'm not sure that I remember very many cases where stellar reputation going to the merits of a claim has much legs. I mean, there are lots of people with stellar reputations that have fallen from grace. So what's your best argument outside of this gentleman's stellar reputation? Well, Your Honor, I mean, the stellar reputation was a way to frame the issue, but it does go to the issue of appearance, because when we look at whether it's in criminal law or something else, when we look at, when we try to assess whether somebody's done something, we do consider character evidence. But in terms of conduct as well, we don't think that there was, you know, much to the contention, much to the merits of their contention, because there was no appearance of bias. Can I ask a question? I may disagree with the Chief here a little bit. Can you help me? Why does the failure to disclose matter? It seems under either Chapter 2 or Chapter 1, the concept of evident bias or some version of that requires, like, seems like to me under the convention, actual bias, not like a procedural error. So whether he failed to disclose or not doesn't seem to address the question that we would have, right? So if there was a procedural failure to disclose, but what was disclosed doesn't represent evident bias or some such standard under Chapter 2, then why would that matter at all? I guess you accepted the Chief's framing, which is generally a good place to start, but I wonder whether that framing is correct, that a mere failure to disclose could never be sufficient under the convention, that it requires, like, actual bias, not the mere appearance of bias. Well, I think it requires that under both FAA and the New York Convention, sir, because the New York Convention, it refers to, you know, the language. The language there is public policy. And public policy, that's an exception. Well, the convention has a huge pro-enforcement bias. Under public policy, it is nearly impossible. It's an insuperable standard. I don't want to, well, nearly insuperable standard. It's an exception to the pro-enforcement side, because the idea is that there is a certain kind of nebulousness to public policy, the phrase public policy. It has to be in Justice White's words in Commonwealth Coatings, which, by the way, was, I read that, as did Judge Kaufman in Moralite, that's a father-son case from the Second Circuit. He read that as, he said he thought much of Justice Black's majority opinion was dicta, because it was the white concurrence that controlled. And Justice White was very clear about that. He's like, you know, we don't want, you know, anything short of outright chicanery to be, to call it into question. And I agree with Your Honor that evident bias, evident bias also under the FAA is the same standard. If you look at, and that's in the Kaufman opinion in that case, Moralite. But also, you know, I'm a textualist. I went back to the dictionary, 1925, and what does evident mean? It means manifest. It means clear. It means apparent. This miasma, penumbras, emanations of what might be biased optics, basically, what do other people think, that doesn't cut any ice. Can I ask the question I talked to your colleague a little bit about? If, hypothetically, Chapter 2 did not apply in this context, do you think Chapter 1 in the FAA permits compelling arbitration and affirming arbitration where the arbitration occurs in Bermuda? Yes, sir. So I want to go back to Judge Richardson's point about what exactly we're supposed to be looking at here, although I don't necessarily disagree with him. I mean, there is some, one of the arguments that your colleague on the other side is making is that there's a public policy imperative in having an arbitrator make a disclosure with respect to, you know, potential or appearance of bias that a reasonable person on the other side would want to know about. And so the question is, is that part of the analysis in this case, or do we simply look at the bottom line as to whether or not the arbitrator was, in fact, biased? I think that under the public policy standard, I would look at whether or not he was actually biased. I don't understand where precisely this disclosure requirement under the New York Convention of Public Policy, or evident bias, the word is bias under the FAA, where that would come from. And I think that, you know, I was going through the do me through Caperton line of precedent, because I guess the test is basic notions of morality and justice, that's what, for public policy. And I was going through that, and in all of those cases, it's, the court seems to say that most of the times judicial disqualification is going to be a no-go, that judicial disqualification is judicial recusal, judicial disqualification that's, you know, due process isn't going to control that. But in the very extreme cases, it will. So I don't see anything about disclosure in those opinions, Your Honor. What about the University Commons case, where the court set out a three-part disclosure, which included some notion that disclosure might be relevant in the analysis? I think that whether it was there or Commonwealth courtings, it's a good idea sometimes to disclose, but I don't think it says that, I mean, forgive me if I'm misreading it, that it's a must. It just says that it takes things out of the equation, it takes things out of the gray area, and, you know, puts everybody on good eyes. But at the same time, you know, and I forget which case it was, Chief Justice Rehnquist, in one of the 1990s cases, he said that, look, you know, we don't want these kinds, if we allow, if we make these requirements, what that's going to encourage is for people to, is for our judges or arbitrators and others to be forced to reveal pretty much non-issues, a laundry list. I remember that phrase, laundry list of non-issues. And Justice White in Commonwealth courtings, he said that we don't want unexpurgated business biographies and personal biographies to be revealed, to have to be revealed by arbitrators. And here we see that it would be a kind of evulsive rupture from where the Supreme Court has, court has been for this court or some other court to have to bravely and boldly go and say that, look, you know, it's not the parties, it's the lawyers. And, you know, the fact that there was a commonality or some kind of an overlap, regardless of the fact that the theories just don't work of why the judge would be, why the judge would have had some quid pro quo or would have tried to curry favor, the fact that it's the lawyers, it would be, it just fails under the public policy test. You don't think a reasonable party would want to know that the arbitrator who's deciding his case is being sued by one of the lawyers in a case that might spell the doom of his law firm? You don't think that would be important? I wouldn't want to know. I hope I'm reasonable. It would seem to me to be pretty irrelevant. It's the lawyers. It's a small legal community. There are only 544 lawyers at the Bermudan Bar I checked last night, and there have been 24 lawyers added since we filed our brief. And Arbitrator Duncan, he's at the pinnacle of the profession. I don't mean to, again, put great store in his reputation, but he's at the pinnacle of the profession. They needed to find, you saw in the 71-page final award, it's an involved opinion. They deal with a lot of things about Bermudan law, English law, the law lords, well, now the U.K. Supreme Court, all those issues, and they needed to find somebody who would be good enough, strong enough, robust enough, and erudite enough to render an opinion like that. And who's suing whom, why, and the fact that it's lawyers. If it were parties, that would be a slightly different question, perhaps. But this is an entirely different foxhunt altogether. So let me ask you a slightly different question. As I understand what happened in this case, you correct me if I'm wrong, your clients would have initially filed in the district court seeking an order to arbitrate, which they got. And then they came back and filed an application to enforce the arbitration award by the arbitrator in Bermuda. And in your application, you said the court's authority to act is under the New York Convention, Section 2. Correct? Yes?  Okay. So if we were to determine, for whatever reason, that that was an error, there was no reasonable relation, for instance, to a foreign country, what would happen at that circumstance? There's been some discussion about whether the FAA could apply. But as I understand how this transpired in the district court, that's never an argument that you made. The only argument about it was by opposing counsel as a defensive argument. So if that were the case, how would you proceed under the FAA to confirm your award without sending it back to the district court? Your Honor, that is a procedural and jurisdictional matter that my colleague would be better equipped to answer than I. But if Your Honor would like, we are happy to offer further briefing on that issue. Okay. Well, let's see what opposing counsel has to say. Thank you very much. Thank you, Your Honor. I believe the court understands my position with respect to the jurisdictional issues. I'm just happy to answer any questions that you all may have on that set of issues. To go to the Chief's questions on the merits, assuming we got there somehow, what's the best case or thing that I should look at to understand that there's a public policy exception under Chapter 2 for mere disclosure of a fact that itself does not create evident bias?  Because if itself creates evident bias, then we just are on the merits. But where would I look to find some suggestion that there's like a mere disclosure piece under Chapter 2? So Chapter 2 incorporates the New York Convention, which provides seven express grounds of which you can challenge it. One of which is public policy. And so in Commonwealth Codings, the Supreme Court said that, announced the well-defined and dominant U.S. policy that arbitrators must disclose to the parties any dealings or relationship that might create an impression of possible bias. And subsequent federal courts have, or federal cases have held that although Commonwealth Codings was decided in the context of an evident partiality standard, its announcement of U.S. policy is nevertheless applicable to Article 4 of the New York Convention, which is the public policy defense. And so those cases include Transmarine Seaways Corporation of Monrovia v. Mark Rich and Company, AG, 480F Federal Supplement 352. It's a Southern District case from 1979. And similarly, I think that we've kind of been conflating the public policy defense with the evident partiality defense. And I think those are separate issues in this case. I don't think those standards are the same. So you think that the Chapter 2 standard of public policy is actually broader than the Chapter 1 evident bias standard? I believe so, Your Honor. And I think the cases demonstrate that. The public policy is actually like more protective. I think so. It at least has less case law kind of describing the bounds of it. It's a little bit more of an amorphous kind of topic. There's not, you know, the A&R Cole factors or something like that for the public policy defense, whereas there is for the evident partiality defense. So that's where I think the public policy defense, how it frames the issue is the Commonwealth Codings. Commonwealth Codings was not a Chapter 2 case, was it? It was not. Okay. And that's why the subsequent cases, like Trans-Marine Seaway cases, talk about how while Commonwealth Codings was a domestic arbitration award under Article 1, it's equally applicable to claims for non-enforcement under Article 5. So my question then is, are you suggesting that there are different standards under Chapter 1, Chapter 2 with respect to disclosure, or does it apply across the board? I think there are different standards. I think that there's the public policy standard. Why would Congress create different standards? Because one deals with foreign arbitration awards under the New York Convention, which is kind of this whole body of law, and the other deals with domestic awards under Article 1 of the FAA. So would evident bias and effect under your view be subsumed within the public policy argument? I think they're very related. I think that they are overlapping circles but not exactly the same because the cases discussing public policy haven't articulated such a, you know, kind of the four-factor test like in our court. Give us your best, very pithy, direct, why is there a problem here with the failure to disclose this relationship with the lawyers when it's not parties? Why is that an overwhelming show of either evident bias or a violation of public policy? It's because, Your Honor, that a reasonable observer, like Chief Judge Gia said, that a reasonable observer would want to know that the person deciding the facts and the law in this matter is being sued by a former client that is represented by the same lawyers that are representing the party to the arbitration. And like the 11th Circuit discussed in University Commons Urbana. Judge, you think that there would be the temptation to throw them a bind, so to speak? Sure. I think that under the, similar to the Tate-Haberton case, I think that under, you know, a realistic appraisal of human psychology and human weakness, that arbitrator Duncan, you know, subconsciously or not, would use whatever influence he could to, in an attempt to influence the counsel. So what would happen if you thought it was equally feasible that he would take the position that I want to show these guys how tough I am, so that they're going to know they're in for a real battle. So I'm not going to be helpful to them at all. I think that that is possible. I think it's less likely, given that arbitrator Duncan, you know, would presumably not want to antagonize the very lawyers who are spearheading the claims against his firm. All right. Thank you very much, Mr. Ford. Thank you very much to the lawyers for their argument in this case. We'll come down and greet you and move on to our final case.
judges: Albert Diaz, G. Steven Agee, Julius N. Richardson